# United States District Court
### for the
### Western District of New York

United States of America

v.

Jacob Tunison

*Defendant*

Case No. 19-mj-5011

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### Count 1
### (Production of Child Pornography)

On or about November 25, 2018, in the Western District of New York, the defendant, **Jacob Tunison**, did knowingly employ, use, persuade, induce, and entice a minor, that is, Victim 1, a person under the age of eighteen years, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that the visual depiction would be transported using any means and facility of interstate and foreign commerce.

**All in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).**

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

CHAD W. ARTRIP
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 5, 2019

*Judge's signature*

City and State: Buffalo, New York

HONORABLE MICHAEL J. ROEMER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Chad W. Artrip, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Buffalo, NY Field Office, Jamestown, New York Resident Agency. I have been employed as a Special Agent of the FBI since October 2007. As part of my assignment, I am responsible for investigating, among other things, the possession and production of child pornography. As a Federal Agent, I am authorized to investigate violations of laws of the United States, including Production of Child Pornography in violation of Title 18, United States Code, Section 2251(a), and Possession of Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B). As part of these duties, I have become familiar with the manner in which subjects exploit children for sexual purposes, including how they (1) recruit victims; (2) groom victims; and (3) use social networking sites, such as Facebook, to communicate with victims and other subjects in order to facilitate their unlawful activities.

2.  I make this affidavit in support of a criminal complaint charging JACOB TUNISON with production of child pornography in violation of 18 U.S.C. § 2251(a).

3.  The statements contained in this affidavit are based on my involvement in this investigation, as well as information provided to me by other law enforcement officers involved in this investigation, and upon my training and experience. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included

1

each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that TUNISON committed the charged offense.

II. **THE INVESTIGATION AND FACTUAL BASIS**

4. On 1/14/2019, your affiant met with police officers of the Cuba, New York Police Department (CPD) regarding the possible sexual exploitation of a child using social media. The 13-year old female victim is referred to hereinafter as VICTIM. The subject of the investigation was Jacob Tunison, a 29-year old male.

5. In October and November of 2018, VICTIM lived with her biological father and others in Cuba, New York within the Western District of New York. Unbeknownst to VICTIM's biological father, at an unknown date and time, VICTIM's biological mother provided VICTIM with a cellular telephone (Phone 1).

6. During or about late October 2018, VICTIM used Phone 1 to document alleged matters that prompted an investigation by an unrelated local agency. During the course of that investigation, VICTIM's biological father was interviewed and learned of the existence of Phone 1. VICTIM's biological father attempted to examine the contents of Phone 1 but was unable to do so because Phone 1 was password protected.

7. After VICTIM's biological father learned of the existence of Phone 1, he confiscated the phone from VICTIM and broke the screen. A few days later, VICTIM's

2

biological father found VICTIM in possession of another cellular telephone (Phone 2) after VICTIM had gone with her grandmother to a shopping mall in Olean, New York.

8. After Phone 1 was confiscated from VICTIM by her biological father, VICTIM's grandmother opened her tablet computer (Tablet 1), which had been used by VICTIM after Phone 1 was confiscated from VICTIM, and observed that VICTIM had left her Facebook messenger account open after the last time VICTIM had used Tablet 1. VICTIM's grandmother observed highly sexual chats being conducted using Facebook messenger. According to VICTIM's grandmother, the referenced chats involved victim and an Individual using a Facebook account titled "Jay Thomas".

9. Further, VICTIM's grandmother observed sexually explicit images of VICTIM and "Jay Thomas" that appeared to be exchanged between VICTIM and "Jay Thomas". VICTIM's grandmother also observed videos being exchanged via chats between VICTIM and "Jay Thomas". VICTIM's grandmother described the videos as depicting VICTIM and "Jay Thomas" masturbating. VICTIM's grandmother described "Jay Thomas" as a male in his 30's. VICTIM also observed a portion of the chat in which "Jay Thomas" indicated he could get in a lot of trouble and suggested he and VICTIM should chat using different names.

10. VICTIM's grandmother reviewed earlier chats contained on Tablet 1 between VICTIM and "Jay Thomas" and observed chats that led VICTIM's grandmother to believe that "Jay Thomas" had chatted with VICTIM in the past using a Facebook account titled "Jake Tunison".

3

11. On November 26, 2018, VICTIM's biological father and grandmother did report the discovery of the referenced material on Tablet 1 to the Cuba, New York Police Department (CPD) who did refer the matter to the Allegany County Child Advocacy Center (CAC) where the VICTIM was later forensically interviewed. In addition to advising CPD of the above referenced chats and images/videos, VICTIM's grandmother provided CPD with a printed image of the "Jake Tunison" Facebook page. CPD took screenshots of Tablet 1 that depicted the above referenced chats between VICTIM and "Jay Thomas". The referenced screen shots did contain images that were sent by VICTIM to "Jay Thomas" that depicted VICTIM engaged in a lascivious display of her genitals. Screenshots were not obtained of chats involving "Jake Tunison" or chats that suggested chatting using different accounts. Your affiant did review the screenshots of Tablet 1 obtained by CPD. The chats appear to be conducted on the Facebook mobile application. Excerpt of the chats as depicted in the screenshots of Tablet 1 are as follows:

<u>November 24, 2018</u>

JT: hey babe

V: hey

JT: this show is really turning me on

V: lol

JT: I want that pussy so bad babe

V: ik

<u>November 25, 2018</u>

JT: Wanna fool around now?

4

| | |
|---|---|
| V: | This phone takes shitty pics |
| JT: | Lemme see |
| JT: | I didn't think they'd be that great |
| JT: | Half the fun for me is showing you anyways |
| V: | Lol true |
| JT: | (sends image of erect penis) |
| JT: | (sends image of erect penis) |
| V: | (sends image of side body view. VICTIM is fully clothed) |
| JT: | Good girl |
| JT: | That picture isn't too bad |
| V: | It's awful lol |
| JT: | You're so sexy |
| JT: | Make me cum baby |
| JT: | Take it slow though |
| V: | (sends image of side body view. VICTIM is nude from the waist down) |
| JT: | (sends image of an erect penis. <u>The Individual's face is fully visible in the image.</u>[1]) |
| JT: | Lemme see more of your sexy ass |
| V: | Yes daddy, what do you want me to do |
| JT: | (sends image of erect penis) |

---

[1] Your affiant reviewed an image of TUNISON's face that was included on TUNISON's criminal history report. That picture appears to show the same individual depicted in both TUNISON's publicly viewable Facebook account and this image sent to VICTIM.

5

JT:   Take your shirt off and do another side shot

JT:   Is there anything you want me to do?

V:   idc baby

V:   (sends image depicting VICTIM facing the camera wearing only a bra. The victim's vagina is visible in the image)

JT:   If there's anything different that you want, just lmk

V:   OK

JT:   Ya baby youre so sexy

JT:   I wanna cum inside you so bad

V:   Thanks babe

JT:   Take your bra off

JT:   I haven't even been watching porn lately. I've only been cumming to your pics and vids

JT:   (sends video depicting manual masturbation)

…

JT:   I'm so hard babe

JT:   (sends image of erect penis)

V:   (sends image of VICTIM's fully nude body. VICTIM's vagina is fully visible)

…

JT:   Let me see that pussy

V:   I still haven't shaved just do you know

JT:   (sends image depicting manual masturbation)

JT:   That's fine babe

JT:    I like ot both ways. As long as it isn't a bush

V:    (sends image zoomed in on VICTIM's vagina)

JT:    mmmmm

JT:    Spread the lips and lemme see inside

JT:    I wanna see a pic of you biting your lip

JT:    full face

V:    (sends image depicting the VICTIM's fingers spreading the VICTIM's labia)

JT:    (sends image of a penis that has a white substance on it. The image is captioned "Little bit of precum".

JT:    video

V:    (sends image of face which appears to depict VICTIM)

...

JT:    Do a full frontal video

JT:    I'd like to cum together on video chat but I know that's hard for you

JT:    (sent video depicting "Jay Thomas" masturbating)

V:    (sent video depicting VICTIM masturbating)

JT:    close up video

JT:    I'm close

V:    (sent video of VICTIM masturbating. Video is zoomed in on VICTIM's vagina)

JT:    (send video depicting "Jay Thomas" mastubating)

V:    damn

JT:    Ya I came pretty good

12. Additional screenshots obtained from Tablet 1 contained images of chats that indicate the VICTIM and the Individual using the Facebook account name "Jay Thomas" met at a shopping mall for "Jay Thomas" to provide Phone 2 to VICTIM. Excerpts of the referenced Facebook chat are as follows:

November 24, 2018

V:  We are on the way to Olean

JT: Okay babde

V:  Lmao we are in Olean

JT: Okay, you'll be at the mall for a little while, right? I just got out of the shower.

V:  I think so, I'll let u know when we r at the mall

V:  where r we meeting?

...

V:  pls hurry

V:  I'm anxious

JT: How are you gonna get away from your grandparents?

JT: so am I

V:  They know imma go see a friend

...

JT: You'll have to set the phone up and stuff

V:  alright

JT: I wiped my email off it and shit

V:  OK

V:  It doesn't have data does it??

8

JT:   yes it does

...

JT:   Its just gonna be a quick hug, kiss, and hand you the phone

V:    Fr

JT:   I don't want your grandparents seeing me

V:    They are on the opposite side of the mall

JT:   Do you realize how much trouble I can get in?

...

V:    is that phone gonna be a bitch to set up

JT:   no it shouldn't be


13.     The messages show that TUNISON was aware that VICTIM was under the age of 18. Your affiant reviewed a screen shot of a chat on Facebook between VICTIM (V) and Facebook user account "Jay Thomas" (JT) that occurred on or about November 24, 2018. An excerpt of the referenced chat is as follows:

JT:   so you can chose to go live with your mom on your birthday right?

V:    My 16th

V:    I might live with my grandparents tho

JT:   Damn I though you could next yr

V:    No sorry babe

In view of the referenced chat, it appears that TUNISON believed VICTIM was no older than the age of 14.

14. On or about November 29, 2018, VICTIM was interviewed at the Cattaraugus County Child Advocacy Center (CAC). VICTIM was asked about the above referenced chat activity to include an image that depicted the face of "Jay Thomas". VICTIM identified the person with whom she engaged in the referenced chats was named "Jake". VICTIM denied knowing Jake's last name. VICTIM stated that she met "Jake" in passing in summer 2017 at a Christian camp in Franklinville, New York and saw him again about a month later at a shopping mall in Olean, New York, which, according the VICTIM, occurred randomly and was not a planned meeting. VICTIM stated that "Jake" initiated contact with her via Facebook messenger. During the referenced interview, VICTIM denied sending sexually explicit pictures to "Jake" but did admit to receiving a "dick pic" from "Jake". VICTIM suggested that her cousin could have sent images of VICTIM to "Jake" as VICTIM's cousin once had access to VICTIM's phone. VICTIM also denied engaging in sexually explicit chats with "Jake".

15. VICTIM stated that she met "Jake" again at the shopping mall in Olean, New York about three days after VICTIM's biological father confiscated Phone 1 from VICTIM. During the referenced encounter at the shopping mall in Olean that occurred after Phone 1 was confiscated, "Jake" gave VICTIM Phone 2.

16. Also during the CAC interview on November 29, 2018, VICTIM admitted to producing sexually explicit images and videos of herself and sending them to another juvenile male at her school. VICTIM stated she used Phone 1 to produce the referenced images and videos.

17.     On or about January 3, 2019, VICTIM was re-interviewed at the CAC. VICTIM advised that she is in a relationship with "Jake" and does love him. VICTIM again admitted to producing sexually explicit images and videos using Phone 1. However, VICTIM admitted that she produced the referenced images and videos at "Jake's" direction and sent the referenced images and videos to "Jake" using Facebook messenger. VICTIM stated that she produced the referenced images and videos in the bathroom at her biological father's residence in Cuba, New York which is within the Western District of New York. VICTIM stated the images and videos included images of her vagina and videos depicting VICTIM engaged in masturbation. VICTIM stated she felt pressured by "Jake" into producing the images and videos as "Jake" threatened to stop talking to VICTIM if she did not produce the sexually explicit images and videos.

18.     VICTIM stated that she and "Jake" discussed their respective ages. VICTIM stated this conversation occurred shortly after she and "Jake" began communicating. VICTIM recalled that she was twelve years when the conversation regarding age occurred and being truthful with "Jake" about her age. As such, because VICTIM and "Jake" met during the summer of 2017 when VICTIM was twelve years old, the conversation regarding age would have occurred between the time of the initial meeting and VICTIM's thirteenth birthday which was in April 2018. VICTIM stated that "Jake" was interested in having sex with VICTIM prior to VICTIM telling "Jake" she was twelve years old. According to VICTIM, "Jake" stopped asking for sex after he learned that VICTIM was twelve years old.

## III. CONCLUSION

19. Based upon the above information, probable cause exists to charge JACOB TUNISON with production of child pornography in violation of 18 U.S.C. § 2251(a).

Chad W. Artrip, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 5th day of February, 2019.

HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge